IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

DEJUAN HAYNES,

                Plaintiff,                No. 4-18-CV-436-CRW-HCA

vs.                                  ORDER

BRIAN MINNEHAN, individually and in his
official capacity as a law enforcement officer
for the Des Moines, Iowa Police Department;
RYAN STEINKAMP, individually and in her
official capacity as a law enforcement officer
with the Des Moines, Iowa Police Department;
DANA WINGERT, individually and in his
Official capacity as Chief of Police for the Des
Moines, Iowa Police Department; CITY OF
DES MOINES, IOWA ,

                Defendants.

      Plaintiff DeJuan Haynes (Haynes) alleges City of Des Moines (City) law enforcement officers Brian Minnehan (Minnehan) and Ryan Steinkamp (Steinkamp) violated Haynes' constitutional rights under federal (Count I) and Iowa (Count II) law by seizing him and placing him in handcuffs during a vehicle stop. Haynes alleges Minnehan and Steinkamp violated his constitutional rights under federal (Count III) and Iowa (Count IV) law by extending the stop beyond what was reasonably necessary. Haynes also alleges Chief of Police Dana Wingert (Wingert) and the City violated Haynes' constitutional rights under federal (Count V) and Iowa (Count VI) law by failing properly to train and supervise officers of the City police department.

      Defendants have moved for summary judgment (Docket #28) on qualified immunity grounds. The court held a courtroom hearing on the resisted motion on March 12, 2020. The court grants summary judgment for the defendants, with costs assessed to the plaintiff.

      FACTS. The following facts are undisputed:

1. In the early evening of July 26, 2018, Minnehan and Steinkamp were on patrol for the City police department in Des Moines, Iowa.

2. Steinkamp was driving a City police patrol vehicle and Minnehan was riding in the passenger seat.

1

3. On July 26, 2018, Haynes was driving a Volkswagen Phaeton sedan on Indiana Avenue in the City.

4. At approximately 8:38 p.m., Minnehan and Steinkamp were driving East on Indiana Avenue when they encountered Haynes driving West.

5. Minnehan and Steinkamp, along with a third officer, Ryan Garrett (Garrett), were assigned to the City police department's "Summer Enforcement Team" (S.E.T.) a proactive policing initiative meant to reduce criminal activity in areas of the City where criminal activity has been reported either by arrest or by public requests.

6. The 2018 S.E.T. program lasted from mid-April to mid-October.

7. As part of their training and experience as S.E.T. patrol officers, the officers learned to observe interactions between individuals, both on foot and in vehicles, looking for suspicious interactions that could involve illegal drugs.

8. The City provides to all officers annual training on implicit bias so that officers can avoid action that is motivated, even subconsciously, on the basis of race, gender, ethnicity, or other protected characteristic.

9. At the time of the incident involving Haynes, the City police department had been getting many complaints from the community about drug activity, prostitution and other lesser criminal offenses in the area of 7th Street and Indiana Avenue in the City.

10. On the evening of July 26, 2018, Garrett was in plainclothes and in an unmarked automobile, a green van, in the area along Indianola Avenue and 7th and 8th Street.

11. Steinkamp and Minnehan were patrolling in the area in a marked police cruiser. They responded to any notifications from Garrett of suspected criminal activity.

12. If Garrett observed suspicious activity, he alerted other officers, in this case the nearby Minnehan and Steinkamp.

13. At approximately 8:40 p.m. Garrett observed at the corner of 7th Street and Indiana Avenue a car which was just ahead of him on 7th Street. The car appeared to be an expensive and unique car. It had come to a stop while heading Southbound on 7th just prior to Indiana Avenue.

14. Garrett observed an individual who was on the sidewalk along the corner of 7th and Indiana as he approached the car on the passenger side.

15. Garrett observed that the meeting between the pedestrian and the occupant of the car lasted approximately 10 to 15 seconds. There appeared to be an exchange of something between them.

16. Garrett's training and experience led him to suspect that the brief interaction he had observed in a neighborhood in which crime had been reported, may have been an illegal drug transaction.

17. Haynes, the driver of the vehicle, then turned on Indiana Avenue headed West. Garrett followed the car onto Indiana Avenue.

18. As per the S.E.T. methodology, Garrett then alerted the patrolling Steinkamp and Minnehan that he had observed a suspected hand-to-hand transaction involving illegal drugs.

19. Garrett observed Steinkamp and Minnehan pass Haynes' vehicle.

20. At the time they passed Haynes' car, Steincamp and Minnehan noticed that Haynes' car had a cracked windshield, a potential violation of Iowa Code §321.438(1)("A person shall not drive a motor vehicle equipped with a windshield, sidewings, or side or rear windows which do not permit clear vision").

21. Haynes' vehicle stopped at the stop sign at 9th and Indiana, and the officers' hood-lights went on almost immediately afterward.

22. Haynes put both of his hands outside of the driver-side window indicating his hands were empty.

23. Steinkamp approached Haynes at his driver-side window and spoke to him through the open window.

24. At the same time, Minnehan approached Haynes at the passenger's-side window.

25. Minnehan explained that the stop was made because of a cracked windshield, which Haynes acknowledged. He stated that he had been stopped previously by other officers about the windshield.

26. Haynes explained that he had not repaired the windshield due to the expense of the repair.

27. Steinkamp asked Haynes why he was in the neighborhood. Haynes stated that he was giving money to someone.

28. Haynes admitted to the officers that "I don't have my I.D."

29. After obtaining from Haynes orally his personal information, Steinkamp asked Haynes to exit his vehicle.

30. Steinkamp explained to Haynes that because he did not have identification, Steinkamp would be placing him in handcuffs.

31. Minnehan asked Haynes if he had anything illegal in the car. Minnehan explained that Haynes was being placed in handcuffs because he had no identification, he was in a high crime area, and he was driving a vehicle not expected to be in the neighborhood.

32. Minnehan reassured Haynes that the handcuffs come off as easily as they go on.

33. Steinkamp informed Haynes, "I'm going to pat you down".

34. Steinkamp then asked Haynes, "Can I check your pockets?"

35. Haynes consented to Steinkamp's request to search Haynes' pockets.

36. While Steinkamp was searching Haynes' pockets, Haynes explained to Officer Minnehan that he had stopped down the street and given money to an individual through his car window.

37. Minnehan informed Haynes that Minnehan had probably observed 75 hand-to-hand sales of crack at that same location and that was why Haynes was stopped, was out of his car, handcuffed and searched.

38. Steinkamp, while frisking Haynes' left leg, asked Haynes if he was hiding anything in his groin; Haynes said he was not.

39. Steinkamp asked Haynes if he had on another pair of pants underneath his pants.

40. Haynes told Steinkamp that he did have on another pair of pants underneath his pants. Haynes said that that Steinkamp could "undo my belt and check those pockets also, I don't mind."

41. Steinkamp proceeded to loosen Haynes' belt and check the pockets along Haynes' thighs; the video does not show him touching Haynes' genitals.

42. During Steinkamp's search of Haynes, Minnehan had noted a wad of cash in Haynes' pocket; the bills were almost all singles and fives.

43. Steinkamp ended the search of Haynes, then went back to the squad car to run a computer background search using the information Haynes had provided. Steinkamp was searching whether there were any outstanding warrants for Haynes.

44. While Steinkamp was in the patrol car, Haynes and Minnehan discussed the neighborhood they were in and the fact that it was a high-crime neighborhood.

45. Steinkamp left the squad car and returned to Haynes to ask follow-up questions about his drivers' license, his address, the correct spelling of his name, and his social security number. Steinkamp then returned to the squad car.

46. A separate squad car stopped nearby. Minnehan sent it away, stating that no assistance was necessary.

47. Minnehan and Haynes continued to discuss various items, such as Haynes' business, the neighborhood, and Haynes' family members whom Minnehan knew.

48. Steinkamp returned from the background check and indicated to Minnehan to release Haynes from the handcuffs; Minnehan did so.

49. Haynes, Steinkamp, and Minnehan continued to engage in small-talk, primarily on the subject of Haynes' brother.

50. Haynes and the officers parted ways; Haynes was not issued a citation.

ANALYSIS. The court applies the familiar summary judgment standard. Summary judgment is an appropriate disposition when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Zubrod v. Hoch, 907 F.3d 568, 575 (8th Cir. 2018). The parties seeking summary judgment bear the initial burden of demonstrating the absence of a genuine issue of fact for trial. Robinson v. White County, Ark., 452 F.3d 706, 714 (8th Cir. 2006). Once the moving parties satisfy their initial burden, the nonmoving party must go beyond the pleadings and, by his own affidavits or discovery, set forth specific facts showing there is a genuine issue for trial. In resisting the motion for summary judgment, Haynes has not demonstrated in this record that any material fact questions exist.

The Court of Appeals for the Eighth Circuit has stated that a motion for summary judgment on qualified immunity grounds is only precluded when the plaintiff asserts a violation of a constitutional right and demonstrates that the alleged right was clearly established at the time, such that a reasonable officer would have known the actions were unlawful. See Blazek v. City of Iowa City, 761 F.3d 920, 923 (8th Cir. 2014). A "clearly established right" is sufficiently clear if every reasonable officer would have understood that the officer's action violates that right. Reichle v. Howards, 566 U.S. 658 (2012).

Counts I and II (improper handcuffing). Haynes concedes that Minnehan and Steinkamp had a reasonable suspicion to stop him. Officers may take any measures that are "reasonably necessary" to protect their personal safety and maintain the status quo during the course of a stop. U.S. v. Smith, 648 F.3d 654, 659 (8th Cir. 2011); State v. Coleman, 890 N.W.

5

2d 284, 300 (Iowa 2017). Haynes contends his handcuffing was not "reasonably necessary" because he posed no threat to the officers. Granted, there is no dispute in this record that Haynes was entirely cooperative and that he complied with all police requests of him. The officers contend, however, that they handcuffed Haynes because it was their policy to do so when the individual they stop can produce no valid state-issued identification. The court concludes that Minnehan and Steinkamp are entitled to qualified immunity because Haynes had no clearly established right to be free of handcuffing for the short time that one of the officers was left alone with Haynes while the other officer returned to the patrol car to run a background check on Haynes.

Counts III and IV (duration of stop too long). Haynes does not argue that Minnehan and Steinkamp had no reasonable suspicion to stop him. He argues that the stop, which lasted about eleven minutes, lasted beyond the time required to dispel their suspicion. But reasonable officers would not have known that the stop was too long. There is no showing on this record that Minnehan and Steinkamp held Haynes any longer than was necessary to run the background search on him; they are entitled to qualified immunity on these claims, as well.

Count V and VI (failure to train and to supervise officers properly). Haynes contends Wingert and the City failed to train City police officers regarding the constitutional limitations on handcuffing. These contentions are without merit for the reasons outlined above.

SUMMARY. The court concludes that the defendants are entitled to summary judgment in their favor and against plaintiff. Costs are taxed to the plaintiff, Dejuan Haynes.

IT IS SO ORDERED.

Dated this 19th day of March, 2020.

*Charles R. Wolle*

CHARLES R. WOLLE, SENIOR JUDGE
U.S. DISTRICT COURT, SOUTHERN DISTRICT OF IOWA